O

# United States District Court
# Central District of California

KERRY MORIARTY,

    Plaintiff and Counter-Defendant,

v.

INTEGON NATIONAL INSURANCE COMPANY,

    Defendant and Counter-Claimant,

v.

SERVIS ONE, INC. DBA BSI FINANCIAL SERVICES,

    Counter-Defendant.

Case № 2:19-cv-03619-ODW (RAOx)

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT [35]**

## I. INTRODUCTION

On September 27, 2017, Defendant/Counter-Claimant Integon National Insurance Company's ("Integon") issued a flood insurance policy (the "Policy") to Plaintiff/Counter-Defendant Kerry Moriarty and Counter-Defendant Servis One, Inc. dba BSI Financial Services ("BSI"). (Def.'s Separate Statement of Uncontroverted Facts ("DSUF") 2, ECF No. 35-2; Pl.'s Statement of Genuine Issues of Material Fact ("PSF") 2, ECF No. 38-1.) After Integon denied a claim by Moriarty for coverage under the Policy, Moriarty initiated this action against Integon asserting two causes of

action for (1) breach of contract based on the Policy, and (2) breach of the implied duty of good faith and fair dealing. (Compl., ECF No. 1.) Integon filed a Counterclaim against Moriarty and BSI, seeking a declaration that Moriarty's insurance claims are not covered under the Policy. (Def.'s Answer & Counterclaim ("Counterclaim") ¶¶ 56–58, ECF No. 11.)

Now, Integon moves for summary judgment on Moriarty's two causes of action and its own Counterclaim. (Mem. P. & A. ISO Mot. Summ. J. ("Motion" or "Mot."), ECF No. 35-1.) The Motion is fully briefed. (*See id.*; Opp'n to Mot. ("Opp'n"), ECF No. 38; Reply ISO Mot. ("Reply"), ECF No. 39.) For the following reasons, the Motion is **GRANTED in part**.[1]

## II. BACKGROUND

The Policy provides coverage for "all direct physical loss or damage to covered property by and from the peril of 'Flood' as defined [in the Policy]." (Decl. of Kerry Moriarty ("Moriarty Decl."), Ex. 2 ("Policy") 6, ECF No. 38-2.)[2] The Policy then lists a number of *excluded* perils, including "[l]oss caused by . . . fire." (*Id.*)

On December 16, 2017, the Thomas Fire burned the Santa Ynez Mountains, denuding the landscape. (PSF 11.) Shortly thereafter, on January 9, 2018, a rainstorm fell upon the same region, generating debris flows that damaged hundreds of homes, including Moriarty's property. (*Id.* 12, 34–35.) Then, on January 29, 2018, Moriarty filed a claim with Integon for his loss under the Policy. (*Id.* 5.)

Upon receiving the claim, Integon requested an independent adjuster visit Moriarty's property to inspect the damages. (*Id.* 42.) Integon also retained a geotechnical engineer to conduct another independent investigation and analysis of the main cause of the damage. (*Id.* 13–18.) On April 2, 2018, Moriarty received an email

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] Integon submitted numerous objections to Plaintiff's supporting declaration. The Court need not resolve those objections, as the evidence to which Integon objects is unnecessary to the resolution of the Motion.

from The Roth Law Firm, stating it had been retained for "the investigation and resolution" of Moriarty's claim. (PSF ¶ 50; Def.'s App'x of Exs. ("Def.'s App'x") 13, ECF No. 35-10.) Attached to the email was a twelve-page letter ("the Letter") stating that Integon determined the Policy did not cover damages to Moriarty's property because the Thomas Fire caused Moriarty's loss and the Policy excluded losses caused by fire. (*Id.* at 14–25; Def.'s Reply to PSF ¶ 50, ECF No. 39-1.) The independent geotechnical report Integon had commissioned was also included with the Letter. (*See* Def.'s App'x 26–33.) That same day, April 2, 2018, Moriarty called The Roth Law Firm expressing his disappointment. (Def.'s Supp. App'x of Exs. ("Def.'s Supp. App'x") 4, ECF No. 39-4.) Moriarty then filed the present action against Integon on April 30, 2019. (*See* Compl.)

### III.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Although the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

1      Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

     Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence . . . ." C.D. Cal. L.R. 56-3.

## IV.     DISCUSSION

Integon seeks summary judgment on both of Moriarty's causes of action, as well as on its own Counterclaim. The Court addresses each claim in turn.

### A.    Moriarty's Breach of Contract Claim

Integon contends that Moriarty's breach of contract claim is barred by a one-year contractual limitations clause set forth in the Policy. Under California law, contractual limitations periods of one year in insurance policies are regularly enforced. *See C & H Foods Co. v. Hartford Ins. Co.*, 163 Cal. App. 3d 1055, 1064 (1984); *Keller v. Fed. Ins. Co.*, 765 Fed. App'x 271, 273–74 (9th Cir. 2019), *Niagara Bottling,*

*LLC v. Zurich Am. Ins. Co.*, No. ED CV 19-113 PA (KKx), 2019 WL 6729756, at *5 (C.D. Cal. Oct. 5, 2019).

California law also recognizes some exceptions that might delay or negate a limitations period, such as delayed discovery, equitable tolling, or equitable estoppel. Under the delayed discovery rule, a limitations period may not begin running until inception of the loss, which is defined as the point in time when damages are or should be known to the insured, so long as the insured is diligent in the face of discovered facts. *Prudential-LMI Com. Insurance v. Superior Court*, 51 Cal. 3d 674, 687–88 (1990). Equitable tolling may likewise postpone the running of a limitations period where an insurer has notice of the loss and investigates, so that the period begins to run once the insurer's coverage determination is complete. *Id.* at 687–91. And equitable estoppel may negate application of a limitations period where some conduct by the insurer, relied upon by the insured, induces a late filing of the action. *Id.* at 689–90.

Here, it is clear the one-year contractual limitations period expired before Moriarty filed suit. The undisputed evidence shows the loss occurred on January 9, 2018, and Moriarty filed suit on April 30, 2019, more than one year later. (PSF 4; Def.'s Reply to PSF 8.)

Neither the delayed discovery rule nor equitable tolling render Moriarty's suit timely. The undisputed evidence shows that Moriarty made a claim under the Policy on January 29, 2018. (Def.'s Reply to PSF 4–5.) The parties do not dispute when Moriarty discovered the damage, but in any event, it must have happened by January 29, 2018. It is also undisputed that Integon's investigation concluded by the time it denied coverage on April 2, 2018. (*Id.* 5–6.) So under the equitable tolling rule, the limitations period may have been tolled until April 2, 2018. Regardless, Moriarty filed his Complaint on April 30, 2019. (PSF 8.) Thus, one-year limitations period had run, even after accounting for legal extensions.

Equitable estoppel does not apply either. "In California, an insurer may be estopped to assert a policy provision limiting the time to sue where it has caused the insured to delay filing suit until after the expiration of the time period." *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exchange*, 132 Cal. App. 4th 1076, 1090 (2005). However, "an insurer (who conceals no facts) is not estopped to assert statute of limitations because denial of claim was at most, an incorrect interpretation of the terms of the policy." *Love v. Fire Ins. Exch.*, 221 Cal. App. 1136, 1146 (1990) (internal quotation marks and brackets omitted); *see also Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1152 (2001) ("[A] denial of coverage, even if phrased as a 'representation' that the policy does not cover the insured's claim, or words to that effect, offers no grounds for estopping the insurer from raising a statute of limitations defense."); *Neff v. NY Life Ins. Co.*, 30 Cal. 2d 165, 172 (1947) ("[N]o mere denial of liability . . . should be held sufficient, without more, to deprive the insurer of its privilege of having the disputed liability litigated within the period prescribed by the statute of limitations.").

In this case, Moriarty contends equitable estoppel applies because the Letter "falsely informed him that the damage to his property was the result of fire, not flood, and that his homeowner's carrier would assume responsibility for the damage to his property." (Opp'n 9; Moriarty Dec. ¶¶ 14–18.) However, the Letter merely states, "Based upon [the geotechnical engineer's] investigation and resulting report which concluded in his professional opinion that the efficient proximate cause of your loss was the Thomas fire, . . . there is no potential for coverage under the Policy." (Def.'s App'x 24.) Indeed, Moriarty admits "it was clear from [the L]etter that Integon believed that the primary cause of the damage to the Property was . . . the Thomas Fire." (Moriarty Decl. ¶ 16.) The Letter also recommends, "[I]f you have a homeowners' policy of insurance, you should immediately tender a request for coverage benefits under that homeowners' policy to the insurer who issued that policy." (*Id.*) These statements do not amount to misrepresentations of fact, so they

do not give rise to equitable estoppel. *See Neff*, 30 Cal. 2d at 172 ("Defendant, concealing no fact from the insured, was free to take this position. The insured, knowing all the facts which were known to defendant, was then free to litigate the issue of the liability which defendant had denied.").

Accordingly, Integon is entitled to summary judgment with respect to Moriarty's first claim for breach of contract.

### B. Moriarty's Bad Faith Claim

Next, Integon contends that Moriarty's second claim for bad faith is similarly barred by the contractual limitations period. Indeed, "[w]here denial of the claim in the first instance is the alleged bad faith and the insured seeks policy benefits, the bad faith action is on the policy[,] and the limitations provision applies." *Velasquez v. Truck Ins. Exch.*, 1 Cal. App. 4th 712, 721 (1991).

Examining Moriarty's bad faith claim, it is clearly tied to the policy and, thus, the limitations period. Moriarty alleges, "Integon has breached its duty of good faith and fair dealing" by "[u]nreasonably withholding benefits[,] . . . [f]ailing to apply pertinent policy provisions, and intentionally and unreasonably applying inapplicable policy provisions." (Compl. ¶ 14.) Moriarty also alleges Integon "[u]nreasonably compell[ed] Plaintiff to institute litigation to recover benefits due under the policy" and "[i]nterpret[ed] indisputable policy language and California Law in such a manner as to avoid paying a valid claim." (*Id.*) In other words, it was Integon's steadfast denial of the claim, not any additional act, which Moriarty portrays as bad faith.

Moriarty does seek damages aside from what he believes he is owed under the Policy, but those damages are directly connected to the denial, not any additional act by Integon. *See Velasquez*, 1 Cal. App. 4th at 722. As such, "[n]one of the actions alleged . . . as bad faith relate to events subsequent to initial policy coverage so as to convert [the bad faith claim] from one on the policy to one which is not." *Id.*

Thus, Moriarty's bad faith claim is similarly barred by the limitations period as discussed above, and summary judgment is appropriate as to this claim as well.

### C. Integon's Counterclaim

The final matter for consideration is whether summary judgment is appropriate for Integon's Counterclaim. Again, Integon bears the burden of proving it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a). Here, Integon does not devote any argument or establish any facts showing the appropriateness of summary judgment for its Counterclaim. (*See generally* Motion, Reply.) Moreover, Moriarty's causes of action fail because they are barred by the one-year contractual limitations period in the Policy, but Integon seeks a broader declaration "confirming there is no coverage under the Policy for . . . Moriarty's [insurance] claims, [and] that . . . Integon owes no duties or obligations to either [Moriarty or BSI] under the Policy." (Counterclaim ¶ 58.) Although the Counterclaim now appears moot, summary judgment is not appropriate.

### V. CONCLUSION

In conclusion, Integon's Motion for Summary Judgment is **GRANTED in part**. (ECF No. 35.) As to both causes of action in Moriarty's Complaint, summary judgment is **GRANTED** in favor of Integon. As to the Counterclaim, summary judgment is **DENIED**.

Integon is **ORDERED** to **SHOW CAUSE**, in writing, no later than **March 25, 2021**, for why the Counterclaim should not be dismissed as moot. Alternatively, Integon may file a dismissal of the Counterclaim that complies with Rule 41(a) by that date. Failure to timely respond to this Order shall result in dismissal of the Counterclaim. Upon resolution of the Counterclaim, the Court will issue judgment.

**IT IS SO ORDERED.**

March 18, 2021

                                      **OTIS D. WRIGHT, II**
                            **UNITED STATES DISTRICT JUDGE**